UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 3:10-CR-73 |
| | ) | (VARLAN/GUYTON) |
| DARREN WESLEY HUFF, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION AND ORDER**

The defendant, Darren Wesley Huff, is charged in a superseding indictment with the alleged offenses of transporting a firearm in furtherance of a civil disorder in violation of 18 U.S.C. § 231(a)(2) and using a firearm in relation to a felony crime of violence in violation of 18 U.S.C. § 924(c)(1)(A) [Doc. 19]. Trial is scheduled for Tuesday, October 18, 2011 [Doc. 109].

Before the Court are the following motions: Motion In Limine to Require the Government to Disclose Any Statement by the Accused Which It Seeks to Introduce as an Admission [Doc. 119]; Motion in Limine #2 [Doc. 121]; Motion in Limine #3 [Doc. 122]; Motion in Limine #4 [Doc. 120]; Motion in Limine #5 [Doc. 123]; Motion in Limine #6 [Doc. 128]; and Motion in Limine #7 [Doc. 129]. The government filed a response in opposition to each motion [Docs. 136–42]. After reviewing the motions and the responses, the Court does not find that a hearing is needed to resolve the issues.

## I. Motion in Limine Standard

"Motions in limine allow the Court to rule on evidentiary issues prior to trial in order to avoid delay and focus pertinent issues for the jury's consideration." *United States v. Amir*, No. 1:10-CR-439, 2011 WL 3862013, at *1 (N.D. Ohio Aug. 31, 2011) (citing *United States v. Brawner*, 173 F.3d 966, 970 (6th Cir. 1999)). Evidence should be excluded on a motion in limine only if it is clearly inadmissible. *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004) (citing *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984)). "If the court is unable to determine whether or not certain evidence is clearly inadmissible, it should defer ruling until trial so that questions of foundation, relevancy, and potential prejudice can be evaluated in proper context." *Amir*, 2011 WL 3862013, at *1 (citing *Ind. Ins. Co.*, 326 F. Supp. 2d at 846). "A ruling on a motion in limine is no more than a preliminary, or advisory, opinion that falls entirely within the discretion of the district court." *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994) (citation omitted).

## II. The Defendant's Motions in Limine

### A. Motion In Limine to Require the Government to Disclose Any Statement by the Accused Which It Seeks to Introduce as an Admission [Doc. 119]

The defendant requests that the Court compel the United States to disclose any statement of the defendant wherein the government alleges the same is an admission by a party-opponent [Doc. 119]. The defendant further requests that the Court enter a pretrial order specifying (a) whether any such statements are admissible as an admission pursuant to Rule 801(d)(2) of the Federal Rules of Evidence, and (b) the extent and scope of statements

of the defendant that are admissible pursuant to the Rule of Completeness, Rules 106 and 611 of the Federal Rules of Evidence [*Id.*].

In support of this request, the defendant informs the Court that a primary issue in this case is the intent the defendant harbored when he traveled within the Eastern District of Tennessee on April 20, 2010 [*Id.*]. The defendant anticipates that the government will seek to introduce oral statements the defendant made to a number of individuals in an attempt to establish an unlawful intent [*Id.*]. As an example, the defendant points to the anticipated testimony of Robert Shane Longmire, which the defendant contends will convey the following if consistent with information in an FBI 302:

> "Huff's comments include talk of taking back the government, big brother watching, no freedom of speech, and that government is not about the people anymore."
>
> "On April 15, 2010, Huff advised Longmire that Lt. Fitzpatrick was falsely arrested in Madisonville, Tennessee, and Fitzpatrick was to be in trial at 9:00 a.m. on April 20, 2010. Huff advised he was with the Georgia Militia, and he along with eight or nine other militia groups would travel to Madisonville that morning to take over the city. Huff further advised that Longmire would see his acts on the 12:00 noon news."

[*Id.*].

The defendant argues that, assuming such statements are admissions by a party-opponent pursuant to Rule 801(d)(2) of the Federal Rules of Evidence, there is a concern that the meaning of the statement will be taken out of context unless the entirety of the communication is admitted [*Id.*]. Moreover, the defendant argues that disallowing the

3

entirety of each conversation and/or interview will unconstitutionally prevent the defendant from presenting a complete defense [*Id*.].

The government opposes the motion [Doc. 138]. With respect to the defendant's request to compel the government to disclose any statement of the defendant the government intends on introducing pursuant to Rule 801(d)(2), the government argues that the defendant is not entitled to pretrial disclosure of the information he seeks, and that his motion is an attempt to gain pretrial discovery of the government's witnesses and their statements, which is not discoverable material [*Id*.]. The Court agrees with the government, and does not find it appropriate to compel the government to disclose any statement by the defendant it intends on introducing during trial as an admission pursuant to Rule 801(d)(2).

Rule 12(b)(4)(B) of the Federal Rules of Criminal Procedure provides that a defendant may "request notice of the government's intent to use (in its evidence-in-chief at trial) any evidence that the defendant may be entitled to discover under Rule 16." Rule 16 requires the government to disclose to the defense before trial only specific categories of evidence. Fed. R. Crim. P. 16. "[T]he discovery afforded by Rule 16 is limited to the evidence referred to in its express provisions," and "[t]he rule provides no authority for compelling the pre-trial disclosure of *Brady* material or of any other evidence not specifically mentioned by the rule." *United States v. Presser*, 844 F.2d 1275, 1285 (6th Cir. 1988) (citations omitted). Rule 16 also does not require disclosure of the defendant's voluntary statements or of statements made to persons the defendant does not know are government agents or the defendant's statements inadvertently overhead and memorialized in notes taken by a witness. *See id.*

4

(citations omitted). Further, to the extent that persons will appear at trial as witnesses for the government and testify about admissions made by the defendant, their statements are protected by the Jencks Act and are not required to be disclosed as the defendant requests. *See id.*; *see also* Fed. R. Crim P. 16(a)(2). Hence, the Court finds the defendant's request to compel the government to disclose any statement of the defendant wherein the government alleges the same is an admission by a party-opponent without merit.

Moreover, as the government highlights, what the defendant seeks is akin to a pretrial admissibility determination of co-conspirator statements pursuant to Rule 801(d)(2)(E). Courts within the Sixth Circuit, however, have denied requests to require pretrial discovery of co-conspirator's statements. *See United States v. Happ*, No. CR2-06-129(8), 2008 WL 5101214, at *5 (S.D. Ohio Nov. 25, 2008) (citing cases). The Court finds no reason to do otherwise with respect to statements falling within the other provisions of Rule 801(d)(2).

With respect to the defendant's argument that the Court should rule on the admissibility of any statements to be introduced by the government and determine whether, pursuant to the rule of completeness, additional statements also should be introduced, the Court finds this request moot in light of the Court's finding on the request to compel. To the extent that the defendant believes that the rule of completeness applies to any statements admitted pursuant to Rule 801(d)(2) during trial, the defendant may renew his argument at that time.

Accordingly, the defendant's request that the Court compel the government to disclose any statement of the defendant wherein the government alleges the same is an admission by a party opponent is hereby **DENIED**, and the defendant's request that the Court enter a pretrial order addressing the admissibility of any such statements and whether the defendant may introduce additional statements of the defendant pursuant to the rule of completeness and Rules 106 and 611 of the Federal Rules of Evidence is hereby **DENIED AS MOOT with leave to renew**.

B.     **Motion in Limine #2 [Doc. 121]**

The defendant submits that on April 30, 2010, he was arrested in Knox County, Tennessee and certain items—a Kel-tec 40 caliber firearm; a gas mask and other survival gear; a multitude of ammunition of varying calibers, including multiple rounds of ammunition that could not be fired from any weapon found within the truck; and various canned foods and rations—were seized from his person and vehicle, an older model Ford pickup that had been repainted in a camouflage pattern [Doc. 121]. The defendant requests that the Court preclude the government from introducing any of the items seized as evidence unless and until the government can demonstrate that the specific item sought to be introduced has evidentiary relevance and that the probative value of the evidence is not outweighed by the danger of unfair prejudice [*Id.*].

In support of this request, the defendant submits that the indictment is based upon conduct that occurred on April 20, 2010, on Interstate 75 in Hamilton, Bradley, and McMinn Counties [*Id.*]. On that date, the defendant was driving a black 2004 GMC pickup [*Id.*]. The

6

defendant also submits that the issue in this case is whether or not he harbored an unlawful intent on April 20, 2010 [*Id*.]. The defendant thus contends that the items taken from him on April 30, 2010, bear no causal relationship nor relevance to the intent he harbored ten days earlier [*Id*.]. Further, the defendant contends that introduction of the ammunition and weapons seized on April 30, 2010, will unnecessarily inflame the passions of the jury [*Id*.].

The government contends that the ammunition evidence is relevant to the firearms offenses because the ammunition could be fired from an AK-47, and the evidence at trial will show that, on April 20, 2010, when the defendant was in Madisonville, Tennessee, he admitted to having an AK-47 and 300 to 400 rounds of ammunition in the toolbox of his truck [Doc. 139]. In addition, there will be evidence that, prior to the offense, the defendant stated that he would be traveling to Madisonville on April 20 with other militia groups to take over the city and the courthouse, and that he would be carrying his AK-47 [*Id*.].

The government argues whether the defendant had the intent to commit a civil disorder on April 20 when he traveled to Madisonville, and the fact that he admitted to taking an AK-47 with 300 to 400 rounds of ammunition to Madisonville the day of the offense and then possessed several hundred rounds of ammunition shortly thereafter, has a tendency to show that he was not just blustering when he said he planned to take over the courthouse and the city [*Id*.]. The government also argues that it corroborates the defendant's statement that he had 300 to 400 rounds of ammunition when he was in Madisonville and supports other evidence indicating that the defendant went to Madisonville armed and capable of committing a civil disorder [*Id*.]. Regarding the date of the seizure, the government contends

that there is close enough temporal proximity between the seizure and the offense that it can reasonably be inferred that the AK-47 ammunition was the same ammunition that the defendant claimed to have on the date of the offense [*Id*.]. With respect to the survival gear and the Kel-tec 40 caliber firearm, the government argues that such evidence has a tendency to show that the defendant was serious when he told others he was planning on laying siege to the City of Madisonville and take over the courthouse [*Id*.].

After considering the parties' arguments, the Court cannot find that the defendant has demonstrated the evidence of the Kel-tec 40 caliber firearm, the gas mask, and other survival gear, the ammunition, and various canned foods and rations seized from his truck on April 30, 2010, is clearly inadmissible. The evidence appears probative of the defendant's intent and was seized from the defendant in close temporal proximity to the offenses alleged in the superseding indictment. Moreover, the Court finds the defendant's arguments regarding prejudice unfounded in light of the defendant's admission to having 300 to 400 rounds of ammunition on the date of the offense. Therefore, the defendant's Motion in Limine #2 [Doc. 121] is hereby **DENIED**.

  **C. Motion in Limine #3 [Doc. 122]**

The defendant requests that the Court prohibit the United States from using the following phrase in any form: "That Mr. Huff is a 'birther,' or that he challenges the legitimacy of President Barack Obama'" [Doc. 122]. The defendant contends there is no factual basis to support such phrase and that such phrase is highly inflammatory and lacks any relevance to the issues in this case [*Id*.].

The government opposes the motion, submitting that it will introduce evidence during trial that, on the day of the offense, the defendant went to Madisonville, Tennessee, to execute "Citizens' Arrest Warrants," among other things [Doc. 140]. The government informs the Court that the defendant was in possession of the warrants, as well as documents titled "Affidavit of Criminal Complaint," on the day of the charged offense and the day of his arrest, which state that certain public officials committed treason and are declared domestic enemies, including Barack Hussein Obama [*Id.*]. The government contends that such evidence supports the contention that the defendant intended to execute citizens' arrest warrants and physically arrest public officials in Madisonville, thereby causing a civil disorder [*Id.*]. Further, the government contends that the evidence makes clear that the defendant harbors resentment toward the declared domestic enemies, including the President of the United States, and his resentment is inextricably intertwined with relevant evidence because it cannot be separated from the evidence necessary to show that the defendant's motivation and intent to execute citizens' arrest warrants and cause a civil disorder [*Id.*].

Evidence that is not relevant is not admissible. Fed. R. Evid. 402. Relevant evidence is evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401; *see also United States v. Whittington*, 455 F.3d 736, 738 (6th Cir. 2006) (noting that the test for relevancy is "extremely liberal" (citation and quotation marks omitted)).

Reviewing the record in this case, it is clear that a central issue is the defendant's intent on April 20, 2010. The Court has reviewed the copies of the warrant and affidavit in the defendant's possession, which assert that the President is an "illegal alien, infiltrator and imposter United States [P]resident" and that he and other various individuals are declared domestic enemies of the United States for committing treason [Docs. 140-1, 140-2]. Although the defendant submits that evidence that he is a birther[1] or otherwise challenges the legitimacy of the President is not relevant, if the defendant traveled to Madisonville on April 20, 2010, to effectuate a citizens' arrest and cause a civil disorder, then the citizens' arrest warrants and related affidavits in his possession, including the contents thereof, which suggest that the defendant challenges the legitimacy of the President, may be indicative of his intent in traveling to Madisonville that day.

Regarding the defendant's contention that such evidence is highly inflammatory, the Court cannot determine at this time whether introduction of evidence that the defendant is a birther or otherwise challenges the legitimacy of the President would run afoul of Rule 403. Thus, the Court will defer ruling on the matter until trial so that questions of potential prejudice can be evaluated in proper context. To the extent the defendant believes that introduction of such evidence during trial raises Rule 403 concerns, the defendant may object at such time.

---

[1] Although neither party provides a definition of the term "birther," the Court recognizes that it is a term that defines those who cast doubt upon whether President Obama was born in the United States.

Accordingly, the defendant's Motion in Limine #3 [Doc. 122] is hereby **DENIED with leave to renew**.

### D. Motion in Limine #4 [Doc. 120]

The defendant requests that the Court preclude the United States from eliciting the following information in the presence of the jury: (a) that the group "oathkeepers" terminated the defendant's membership within that organization, and (b) that the "Georgia Militia" terminated the defendant's membership within that organization [Doc. 120]. The defendant submits that the oathkeepers and the Georgia Militia terminated his membership after news of his arrest became public knowledge on grounds that he engaged in violence and/or brought unwanted attention upon the organizations [*Id.*]. The defendant argues that the motive or justification for each organization's termination is not relevant to the issues in this case and allowing the jury to hear that he was terminated presupposes that each group determined that he had done something wrong or illegal [*Id.*].

The government submits that it does not intend on offering evidence regarding the defendant's termination from these groups in its case-in-chief [Doc. 141]. The government also submits, however, that if the defendant offers evidence about his membership in such groups or denies any affiliation with them, then the government will seek to question him about his membership and termination to avoid misleading the jury [*Id.*]. Likewise, to the extent evidence is offered regarding the defendant's "good character," the government submits that it will seek to introduce such evidence because it is relevant to the defendant's character [*Id.*].

In light of the government's representation that it will not present evidence regarding the defendant's termination from either the oathkeepers or the Georgia Militia during its case-in-chief, the defendant's Motion in Limine #4 [Doc. 120] is **DENIED AS MOOT with leave to renew**.

### E.  Motion in Limine #5 [Doc. 123]

The defendant requests that the Court preclude the United States from eliciting the following facts/allegations within the presence of the jury: (a) that the defendant was convicted of any crime in Monroe County Circuit Court related to events which transpired on April 1, 2010; (b) that the defendant allegedly possessed an anti-aircraft gun; and (c) that the defendant equipped his Ford F-250 truck with the capacity to mount an anti-aircraft gun [Doc. 123].

#### 1.  Conviction

The defendant submits that on April 1, 2010, Walter Fitzpatrick was arrested by the Monroe County Sheriff's Department after attempting to effect a citizens' arrest of Gary Petway, the Monroe County Grand Jury Foreman [*Id.*]. The defendant was present and operated a video camera that recorded Mr. Fitzpatrick's attempt, as well as the arrest of Mr. Fitzpatrick [*Id.*]. The defendant was charged with a single misdemeanor count in Monroe County Circuit Court as a result of his purported role in videotaping the events, and he pled no-contest [*Id.*]. The defendant argues that, because his plea was *nolo-contendre*, there exists no judicial admission by the defendant and therefore no valid basis to introduce the fact that

the defendant was convicted of any crime [*Id.*]. Further, the defendant argues the conviction bears no relevance to this case [*Id*].

The government contends that evidence of the defendant's prior Tennessee state court conviction directly relates to conduct constituting part of the inextricably intertwined and intrinsic, or *res geste*, evidence of the defendant's conduct on April 20, 2010 [Doc. 136]. The government submits that it does not, however, intend on introducing evidence of the conviction during its case-in-chief [*Id.*].

In light of the government's representation, the portion of the defendant's Motion in Limine #5 [Doc. 123] seeking to preclude the government from introducing evidence that the defendant was convicted of a crime in Monroe County Circuit Court related to events which transpired on April 1, 2010, is **DENIED AS MOOT with leave to renew**.

### 2. Anti-Aircraft Gun and Truck Adaptation

The defendant submits that whether he possessed an anti-aircraft weapon and whether his truck was adapted so such a weapon could be mounted on it is not relevant to the issues in this case, including whether he possessed an unlawful intent on April 20, 2010 [Doc. 123]. Moreover, the defendant argues there exists no suggestion that the defendant possessed an anti-aircraft weapon when he traveled to the Eastern District of Tennessee on April 20, 2010 [*Id.*].

The government opposes this request, arguing the facts that the defendant possessed an anti-aircraft gun and that his truck was equipped to mount such gun are directly relevant to the issues in this case [Doc. 136]. In particular, the government contends that testimony

or evidence indicating the defendant possessed such a weapon and related equipment, or claimed to have such possession, around April 20, 2010, bears directly on the defendant's intent to use or transport a firearm in furtherance of taking over a courthouse as well as his capability to do so [*Id.*].

The Court finds that the defendant has not demonstrated that the evidence that the defendant allegedly possessed an anti-aircraft gun and equipped his Ford F-250 truck with the capacity to mount an anti-aircraft gun is clearly inadmissible. Indeed, it seems that such evidence may be relevant, as the government suggests, to the defendant's intent to use or transport a firearm in furtherance of taking over a courthouse as well as his capability to do so. Accordingly, the portion of the defendant's Motion in Limine #5 [Doc. 123] seeking to preclude the government from introducing evidence that the defendant allegedly possessed an anti-aircraft gun and equipped his Ford F-250 truck with the capacity to mount an anti-aircraft gun is hereby **DENIED**.

### F. Motion in Limine #6 [Doc. 128]

Pursuant to Rules 401, 402, and 403 of the Federal Rules of Evidence, the defendant requests that the Court preclude the United States from placing into evidence, argument, or questions wherein the subject matter of the same insinuates any of the following: (a) that the defendant purportedly is a "Christian Identity" member; (b) that the defendant is purportedly a member of any White Supremacist group; and (c) that the defendant purportedly has racist, or anti-Semitic beliefs [Doc. 128]. In support of this request, the defendant notes that, among the discovery materials provided are FBI 302 forms wherein at least one witness has

expressed his opinion that the defendant belonged to these groups and/or held anti-Semitic or racists views [*Id*.].  The defendant argues such opinion testimony is not grounded in fact and is incompetent evidence [*Id*.].  Further, the defendant argues such evidence is not probative of any issue to be litigated in this case and is highly inflammatory, will affect the passion and/or prejudices of a reasonable juror, and would be extremely and unfairly prejudicial to the defendant  [*Id*.].

Although the government has evidence of various statements made by the defendant that express or touch upon some of these beliefs and issues, the government submits that it does not intend on introducing the evidence during its case-in-chief [Doc. 137].  However, the government also submits that, should the defendant elect to exercise his right to testify on his behalf and profess to hold or espouse beliefs and opinions that stand in contradiction to his prior statements, then it should be allowed to inquire about the prior statements, which were provided to the defendant during pre-trial discovery [*Id*.].  Likewise, the government submits that it should be allowed use this evidence upon cross-examination of any witness who testifies about the defendant's "good character" [*Id*.].

In light of the government's representation that it will not introduce during its case-in-chief evidence that insinuates that the defendant is a "Christian Identity" member, a member of any White Supremacist group, or has racists or anti-Semitic beliefs, the defendant's Motion in Limine #6 [Doc. 128] is **DENIED AS MOOT with leave to renew**.

### G. Motion in Limine #7 [Doc. 129]

The defendant requests that the Court prohibit the United States from attempting to elicit testimony from witness Robert Shane Longmire relating to the defendant's account(s) at Chase Bank [Doc. 129]. In support of this request, the defendant submits that Mr. Longmire is the branch manager for Chase Bank in Hiram, Georgia and thus has access to the financial information for customers of the bank [*Id.*]. The defendant further submits that, pursuant to its discovery obligation, the government provided an FBI 302, which memorializes an interview between Mr. Longmire and an FBI agent on April 19, 2010 [*Id.*]. The agent reported:

> LONGMIRE advised HUFF is forty years old and had filed for bankruptcy approximately one year ago. HUFF is married and his wife's name is on his account. HUFF has his own artistic light design business where he designs lighting schemes for homes. In recent weeks, HUFF made several ATM withdrawals and completed a $400.00 purchase from an Army/Navy surplus store in Georgia.

[*Id.*]. The agent interviewed Mr. Longmire again on May 4, 2010, and reported:

> LONGMIRE further advised that since the first incident, HUFF visits the branch once or twice per week to deposit small checks ($100 - $200). LONGMIRE believes the checks are for work done in his lighting business. HUFF returns a day or two later to withdraw the same amount in cash.

[*Id.*]. The defendant argues that because Chase Bank is a financial institution as defined by 12 U.S.C. § 3401(1), its agents and employees are subject to federal law, and Mr. Longmire violated 12 U.S.C. § 3401 *et seq.* when he disseminated the defendant's financial information [*Id.*].

The government argues that the motion should be denied [Doc. 142]. In support of this contention, the government submits that it does not intend on introducing evidence of specific bank account transaction activity of the defendant at Chase Bank during its case-in-chief [*Id.*]. It also submits that, should the defendant introduce testimony or other evidence contrary to his bank account records, the government would then seek to introduce such evidence on cross-examination or rebuttal to impeach by contradiction [*Id.*].

In light of the government's representation that it will not introduce any evidence relating to the defendant's bank account at Chase Bank during its case-in-chief, the defendant's Motion in Limine #7 [Doc. 129] is **DENIED AS MOOT with leave to renew**.

### III. Conclusion

For the reasons explained above, the Court hereby **ORDERS** that:

1. the defendant's Motion In Limine to Require the Government to Disclose Any Statement by the Accused Which It Seeks to Introduce as an Admission [Doc. 119] is **DENIED in part** and **DENIED AS MOOT with leave to renew in part**;

2. the defendant's Motion in Limine #2 [Doc. 121] is **DENIED**;

3. the defendant's Motion in Limine #3 [Doc. 122] is **DENIED with leave to renew**;

4. the defendant's Motion in Limine #4 [Doc. 120] is **DENIED AS MOOT with leave to renew**;

5. the defendant's Motion in Limine #5 [Doc. 123] is **DENIED AS MOOT with leave to renew in part** and **DENIED in part**;

6. the defendant's Motion in Limine #6 [Doc. 128] is **DENIED AS MOOT with leave to renew**; and

7. the defendant's Motion in Limine #7 [Doc. 129] is **DENIED AS MOOT with leave to renew**.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE