UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 3:10-CR-73 |
| | ) | (VARLAN/GUYTON) |
| DARREN WESLEY HUFF, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

The defendant, Darren Wesley Huff, was charged in a superseding indictment with transporting a firearm in furtherance of a civil disorder in violation of 18 U.S.C. § 231(a)(2) and using a firearm in relation to a felony crime of violence in violation of 18 U.S.C. § 924(c)(1)(A) [Doc. 19]. In October 2011, the defendant proceeded to a jury trial before the undersigned [*See* Docs. 160–166]. The jury returned a verdict on October 25, 2011, finding the defendant guilty of violating 18 U.S.C. § 231(a)(2), that is, transporting a firearm in furtherance of a civil disorder [Doc. 167].

A Presentence Investigation Report ("PSR") was prepared pursuant to Rule 32 and the United States Sentencing Commission Guidelines Manual (the "Guidelines" or "U.S.S.G."). Noting that the offense of conviction is an offense for which no guideline expressly has been promulgated, the PSR applies U.S.S.G. § 2K2.1(a)(7) as the most analogous offense guideline pursuant to U.S.S.G. § 2X5.1. Section 2K2.1(a)(7), which is the guideline for "Unlawful Receipt, Possession, or Transportation of Firearms or Ammunition;

Prohibited Transactions Involving Firearms or Ammunition," calls for a base offense level of 12. The PSR also applies U.S.S.G. § 2K2.1(b)(6)(B), which increases the offense level to 18, because the defendant used or possessed a firearm or ammunition in connection with another felony offense, namely aggravated assault.

The PSR then employs U.S.S.G. § 2K2.1(c), which provides that "[i]f the defendant used or possessed any firearm in connection with the commission or attempted commission of another offense, or possessed or transferred a firearm or ammunition with knowledge or intent that it would be used or possessed in connection with another offense," then apply U.S.S.G. "§ 2X1.1 (Attempt, Solicitation, or Conspiracy) in respect to that other offense, if the resulting offense level is greater than that determined above." U.S. Sentencing Guidelines Manual § 2K2.1(c). Pursuant to U.S.S.G. § 2K2.1(c), the PSR applies U.S.S.G. § 2A2.2(a)(1), the guideline for aggravated assault, which provides for a base offense level of 14. The PSR also enhances this base offense level by two levels pursuant to U.S.S.G. § 2A2.2(b)(1) and by three levels pursuant to U.S.S.G. § 2A2.2(b)(2)(C), for an offense level of 19.

In addition, the PSR enhances the defendant's offense level by six levels pursuant to U.S.S.G. § 3A1.2(b), and by two levels pursuant to U.S.S.G. § 3C1.1. Combining the U.S.S.G. § 2A2.2 offense level of 19 with these enhancements, the PSR arrives at a total offense level of 27.

The PSR assigns the defendant a criminal history category of I, and this in conjunction with the total offense level of 27 results in a Guidelines range of 70 to 87 months'

imprisonment. The Guidelines range is restricted to 60 months' imprisonment, however, as a result of the statutory maximum set forth in 18 U.S.C. § 231(a).

The parties filed various objections to the PSR, which the Court heard argument on during the first phase of the defendant's sentencing hearing on April 20, 2010. The Court then took the objections under advisement. This memorandum opinion and order addresses those objections. Sentencing is set to continue on **Tuesday, May 15, 2012, at 10:00 a.m., in Courtroom 3C**.

## I. Offensive Conduct Objections

### A. Defendant's Objection #1

The defendant objects to the allegations set forth within the "Offense Conduct" portion of the PSR and the allegation that he made the statements that he would "take over the city" or that he would "take over the courthouse." This objection is **OVERRULED**. Rule 32(c) provides that the PSR contain information relevant to the appropriate kind of sentence or appropriate sentence within the applicable sentencing range, and the statements that the defendant intended to take over the city and the courthouse are relevant in this regard, as they relate to the nature and circumstance of the offense. Also, the Court notes that the information contained in the PSR is taken from the affidavit of complaint, trial testimony, and a review of the United States' Attorney's file.

### B. Defendant's Objection #2

The defendant objects to the "Offense Conduct" portion of the PSR in that he does not want to waive his right to rely upon other evidence to establish the entirety of the conduct

that he alleges is relevant at sentencing. As the defendant has had and will have the opportunity to present evidence relevant to sentencing, Defendant's Objection #2 is **OVERRULED as moot**.

### C.      Government's Objection #5

The government objects to paragraph 10 of the PSR in that it is not complete. The government states it should include the statement the defendant made to the officers during his traffic stop, that is: "We fully intend to proceed forward with those citizen's arrests . . . I've got my 45 because ain't no government official gonna go peacefully." As the PSR was amended to include this statement, Government's Objection #5 is **OVERRULED as moot**.

## II.      Guidelines Calculations Objections

### A.      Government's Objection #1

The government submitted an objection to paragraph 18 of the PSR, which identifies the base offense level as 14 pursuant to U.S.S.G. §§ 2K2.1 and 2X5.1. At the hearing on April 20, 2012, however, the government withdrew this objection to the extent the Court utilizes U.S.S.G. § 2K2.1(c). As explained, *infra*, Section II.B., the Court will employ U.S.S.G. § 2K2.1(c). Government's Objection #1 is therefore **OVERRULED as moot**.

### B.      Government's Objections #2 and #3 and Defendant's Objections #3, #4, #5, and #6

Interrelated are the government's objections to paragraphs 19 and 20 of the PSR and the defendant's objections to paragraphs 19, 20, 21, and 22 of the PSR. The Court addresses them together.

The defendant objects to paragraph 19 (Defendant's Objection #3), which enhances the defendant's offense level pursuant to U.S.S.G. § 2K2.1(b)(6)(B) because the defendant possessed a firearm or ammunition in connection with another felony offense, namely a civil disorder. The defendant states a civil disorder is not a felony offense under state or federal law.[1] He also objects to paragraph 20 (Defendant's Objection #4), which applies U.S.S.G. § 2A2.2(a)(1) (the guideline for aggravated assault), pursuant to U.S.S.G. §§ 2K2.1(c) and 2X1.1. The defendant states it is inappropriate to apply U.S.S.G. § 2A2.2 because there was no assault, or aggravated assault, nor an attempt, conspiracy, or solicitation to commit an assault. In addition, at the sentencing hearing, the defendant argued that neither U.S.S.G. § 2K2.1(b)(6)(B) nor U.S.S.G. § 2K2.1(c) should apply in light of the plain language of Application Note 14.

The government objects to paragraph 19 (Government's Objection #2), asserting that the "other felony offense" for purposes of U.S.S.G. § 2K2.1(b)(6)(B) should be aggravated kidnapping under Tennessee law. The government also objects to paragraph 20 (Government's Objection #3),[2] submitting that the cross reference pursuant to U.S.S.G. §

---

[1]After the defendant filed his objection, the PSR was amended to provide that the defendant possessed a firearm in furtherance of aggravated assault, which, as discussed herein, is a felony under Tennessee law. Accordingly, Defendant's Objection #3 is **OVERRULED as moot**.

[2]The government also objects to paragraph 20 in that it is incomplete. The government submits that it should incorporate the second clause of U.S.S.G. § 2K2.1(c), which states: "If the defendant . . . possessed or transferred a firearm or ammunition with knowledge or intent that it would be used or possessed in connection with another offense . . . ." As the PSR was amended to incorporate this language, this objection is **OVERRULED as moot**.

2K2.1(c) should be to the guideline for the crime of aggravated kidnapping.[3] The government argues that the defendant's intent to unlawfully arrest government officials would constitute confining them unlawfully, substantially interfering with their liberty. Also, the government states the defendant intended to possess a deadly weapon while conducting the unlawful arrests and he told officers during the traffic stop: "We fully intend to proceed forward with those citizen's arrests . . . I've got my 45 because ain't no government official gonna go peacefully." The government further states the defendant intended to conduct the unlawful arrests for the purpose of interfering with the performance of government officials. Thus, the government submits, the defendant committed aggravated kidnapping under Tennessee law.

The first issue the Court must address is the defendant's argument that neither U.S.S.G. § 2K2.1(b)(6)(B) nor U.S.S.G. § 2K2.1(c) apply here because there was no "other offense" under the language of Application Note 14. Section 2K2.1(b)(6)(B) enhances a defendant's offense level by 4 levels, or to level 18 if the resulting offense level is less than 18 after adding four levels, if the defendant "used or possessed any firearm or ammunition *in connection with another felony offense*; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed *in connection with another felony offense*." U.S. Sentencing Guidelines Manual § 2K2.2(b)(6)(B) (emphasis added). Section 2K2.1(c) provides that "[i]f the defendant used

_____

[3]At the sentencing hearing, the government asserted that aggravated assault would be the next most applicable cross reference.

or possessed any firearm or ammunition *in connection with the commission or attempted commission of another offense*, or possessed or transferred a firearm or ammunition with knowledge or intent that it would be used or possessed *in connection with another offense*, apply . . . § 2X1.1(Attempt, Solicitation, or Conspiracy) in respect to that other offense, if the resulting offense level is greater than that determined [pursuant to U.S.S.G. § 2K2.1.]" U.S. Sentencing Guidelines Manual § 2K2.1(c)(1)(A) (emphasis added).

Application Note 14 explains when these guidelines should apply. In general, the guidelines apply "if the firearm or ammunition facilitated, or had the potential of facilitating, another felony offense or another offense, respectively." U.S. Sentencing Guidelines Manual § 2K2.1 cmt. n.14(A). "Another felony offense," is "any federal, state, or local offense, *other than the explosive or firearms possession or trafficking offense*, punishable by imprisonment for a term exceeding one year, regardless of whether the criminal charge was brought, or a conviction obtained." U.S. Sentencing Guidelines Manual § 2K2.1 cmt. n.14(C) (emphasis added). "Another offense" is "any federal ,state, or local offense, *other than the explosive or firearms possession or trafficking offense*, regardless of whether a criminal charge was brought, or a conviction obtained." *Id.* (emphasis added).

The dispute centers around the language "other than the . . . firearms possession . . . offense." The defendant argues that, unlike a felon in possession who may be subject to these guidelines if he possessed a firearm and intended to commit a civil disorder because a civil disorder is an offense separate from the possession offense, the offense of conviction here includes the intent to commit a civil disorder, so that crime cannot be the "other

offense." While the Court understands the defendant's point, the defendant seemingly fails to recognize that the other felony offense or other offense that triggers U.S.S.G. § 2K2.1(b)(6)(B) and/or U.S.S.G. § 2K2.1(c) could be a state offense, such as aggravated assault, as recommended by the probation officer, or aggravated kidnapping, as recommended by the government, whether or not the offense actually occurred or charges were brought. *See also United States v. Cowen*, 196 F.3d 646, 649 (6th Cir. 1999) ("[T]he sentencing guidelines do not restrict § 2K2.1(c), the cross-reference provision, to offenses that were charged in the indictment.").

Also, the Court finds the two cases cited by the defendant during the sentencing hearing in support of his position do not preclude application of U.S.S.G. § 2K2.1(b)(6)(B) or U.S.S.G. § 2K2.1(c). In *United States v. Stubbs*, 279 F.3d 402 (6th Cir. 2002), the defendant pled guilty to violating 18 U.S.C. § 924(o), and his plea agreement provided that such called for a mandatory consecutive term of 60 months' imprisonment. The district court sentenced the defendant accordingly. 279 F.3d at 406. On appeal, the defendant argued that the district court erred in sentencing him to a mandatory 60-months consecutive sentence under 18 U.S.C. § 924(c). The government argued in response that the sentence was proper under U.S.S.G. § 2K2.1(c) because the substantive offense was a violation of § 924(c). *Id.* A panel of the Sixth Circuit disagreed, finding the government's "interpretation of USSG § 2K2.1(c) [did] not comport with the clear and plain language of the guideline" because that section "applies if the defendant uses or possesses the firearm in connection with 'another' offense, i.e., an offense other than the firearm offense for which the guideline is being

8

applied in the first instance." *Id.* at 409. Further, the panel noted that "[i]f the triggering offense and the offense referenced in subsection (c) could be the same offense, there would be no need to use the word 'another'" and "would make the other provisions of § 2K2.1 virtually superfluous." *Id.* at 409–10. *Stubbs*, however, "is no longer good law," and the Sixth Circuit has remanded at least one case for resentencing where the district court relied upon it in refusing to apply the cross reference set forth in U.S.S.G. § 2K2.1(c). *United States v. Bassett*, 111 F. App'x 841, 842 (6th Cir. 2004).

The defendant also cited *United States v. King*, 341 F.3d 503 (6th Cir. 2003). In *King*, the defendant pled guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). The PSR recommended that the defendant's offense level be increased by four levels pursuant to U.S.S.G. § 2K2.1(b)(5)[4] because he used the firearm in connection with another felony assault, assault with a dangerous weapon, when he pointed the firearm at the victim's chest and face. 341 F.3d at 504–05. The district court overruled the defendant's objection and applied U.S.S.G. § 2K2.1(b)(5). *Id.* at 505. On appeal, relying upon *United States v. Sanders*, 162 F.3d 396 (6th Cir. 1998), the defendant argued that the enhancement was inappropriate because the assault with a dangerous weapon occurred simultaneously with the offense of conviction and thus could not be "another felony." *Id.*

A panel of the Sixth Circuit noted that in *Sanders*, the defendants burglarized a pawn shop and took firearms, and were convicted for being felons in possession of firearms in

---

[4]This section was moved to (b)(6) in the 2006 edition of the Guidelines. *See United States v. Fee*, No. 6:05-92-DCR, 2007 WL 4219426, at *3 n.5 (E.D. Ky. Nov. 27, 2007).

violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). *Id.* at 506. The district court applied U.S.S.G. § 2K2.1(b)(5), and the Sixth Circuit found the district court erred in doing so because "there was no separation of time or distinction in conduct between the offense that led to the conviction and the conduct considered for the enhancement." *Id.* The panel distinguished the defendant's case from *Sanders* because there was "'a separation of time between the offense of conviction and the other felony offense, [and] a distinction of conduct between that occurring in the offense of conviction and the other felony offense,'" as the defendant had admitted to obtaining the firearm at least two minutes before confronting the victim. *Id.* (alteration in original and citation omitted). Further, the panel found the defendant took a step further from mere possession to commit a felonious assault with the firearm. *Id.* Thus, the panel found the enhancement was appropriate. *Id.*

Here, the defendant was convicted of transporting in commerce a firearm, "knowing or having reason to know or intending that the same [would] be used in furtherance of a civil disorder," which is "an assemblage[] of three or more persons, which causes an immediate danger of or results in damage or injury to the property or person of any other individual." 18 U.S.C. §§ 231(a)(1), 232(1). Like *King* and unlike *Sanders*, to the extent the defendant would have committed aggravated assault or aggravated kidnapping, those offenses would have been distinct from the offense of conviction, both in time and conduct. Indeed, the defendant committed the offense of conviction at the moment he traveled from Georgia into Tennessee; considering the evidence in this case, he would not have committed aggravated assault or aggravated kidnapping until he reached Madisonville and attempted to execute the

10

citizens' arrest warrants. The Court further finds that applying U.S.S.G. § 2K2.1(b)(6) in particular would not result in "double counting" because the Court would not be applying the guideline because of some theoretical possibility that the firearm possessed by the defendant would have been used in "some unspecified crime in the future," but because the evidence demonstrated by a preponderance of the evidence that the defendant intended on using the firearm to commit an aggravated assault or aggravated kidnapping. *See United States v. Bullock*, 526 F.3d 312, 316–17 (noting that "§ 2K2.1(b)(6) is designed to increase the recommended punishment for those particular defendants whose unlawful firearm possession has created a heightened risk of violence").

Accordingly, the Court finds U.S.S.G. § 2K2.1(b)(6)(B) and U.S.S.G. § 2K2.1(c) may apply to the extent the defendant's firearms facilitated, or had the potential of facilitating, another felony offense and/or another offense. Again, the PSR recommends that the defendant's possession of the firearms had the potential of facilitating an aggravated assault, while the government argues the defendant's possession of the firearms had the potential of facilitating an aggravating kidnapping. The Court, therefore, must decide whether the evidence demonstrates that the defendant's possession of firearms had the potential of facilitating these offenses. The Court considers this question in the context of U.S.S.G. § 2K2.1(c), as a finding that the defendant's possession of firearms had the potential of facilitating one or both of these offenses would trigger application of U.S.S.G. § 2K2.1(b)(6)(B) because both are felonies under Tennessee law and because, to the extent

U.S.S.G. § 2K2.1(c) applies, such would render application of U.S.S.G. § 2K2.1(b)(6)(B) moot.

A person commits aggravated assault under Tennessee law, which is a felony, if he:

(A) Intentionally or knowingly commits an assault as defined in § 39-13-101, and:

(i) Causes serious bodily injury to another;

(ii) Uses or displays a deadly weapon; or

(iii) Attempts or intends to cause bodily injury to another by strangulation; or

(B) Recklessly commits an assault as defined in § 39-13-101(a)(1), and:

(i) Causes serious bodily injury to another; or

(ii) Uses or displays a deadly weapon.

Tenn. Code Ann. § 39-13-102(a)(1), (e)(1). Assault is defined in Tenn. Code Ann. § 39-13-101 as:

(1) Intentionally, knowingly or recklessly causes bodily injury to another;

(2) Intentionally or knowingly causes another to reasonably fear imminent bodily injury; or

(3) Intentionally or knowingly causes physical contact with another and a reasonable person would regard the contact as extremely offensive or provocative.

Tenn. Code Ann. § 39-13-101(a).

Aggravated kidnapping under Tennessee law, also a felony, is defined as:

> (a) Aggravated kidnapping is false imprisonment, as defined in § 39-13-302, committed:
>
> . . .
>
> (2) To interfere with the performance of any governmental or political function;
>
> . . .
>
> (5) While the defendant is in possession of a deadly weapon or threatens the use of a deadly weapon.

Tenn. Code Ann. § 39-13-304. False imprisonment is "knowingly remov[ing] or confin[ing] another unlawfully so as to interfere substantially with the other's liberty." Tenn. Code Ann. § 39-13-302.

The evidence in this case demonstrated that the defendant crossed state lines with firearms and ammunition with the intent to execute citizens' arrest warrants on government officials and to take over the City of Madisonville and the courthouse. The Court finds the evidence insufficient to demonstrate that the defendant was going to falsely imprison those in Madisonville, as the government suggests. Although the defendant stated he would take over the city and the courthouse, it is mere speculation that he intended to remove or confine individuals so as to interfere with their liberty. However, the evidence in this case demonstrated that it is reasonably certain that, had the defendant been able to carry out the plan to execute the citizens' arrest warrants, copies of which he possessed on the day of the offense, he would have either caused others to reasonably fear imminent bodily injury or

caused physical contact that a reasonable person would have found extremely offensive or

provocative, in particular because there was testimony that there was obviously no legitimacy

to the arrest warrants. Moreover, the evidence showed that the defendant would have

possessed firearms in executing the citizens' arrest warrants. Accordingly, the Court finds

the defendant possessed firearms and ammunition with the knowledge or intent that such

would be used or possessed in connection with aggravated assault as defined by Tennessee

law.[5]

As the Court finds that the defendant possessed firearms and ammunition with the

knowledge or intent that such would be used or possessed in connection with aggravated

assault under Tennessee law, U.S.S.G. § 2K2.1(c) provides that the Court must apply the

guideline for aggravated assault, if that guideline results in an offense level greater than that

provided for by U.S.S.G. § 2K2.1. U.S. Sentencing Guidelines Manual §§ 2K2.1(c), 2X2.1.

The guideline for aggravated assault is U.S.S.G. § 2A2.2, and no party disputes this. The

PSR utilizes this guideline, which calls for a base offense level of 14, and applies two

enhancements—U.S.S.G. § 2A2.2(b)(1) and U.S.S.G. § 2A2.2(b)(2)(C)—to reach an offense

_____

[5]During the sentencing hearing, the government cited *United States v. Curry*, 111 F.3d 132
(table), 1997 WL 178885 (6th Cir. Apr. 11, 1997), for the proposition that the guideline for the most
serious offense committed should apply pursuant to U.S.S.G. § 2K2.1(c). While, in *Curry*, a panel
of the Sixth Circuit stated that it agreed "with the district court that '[t]he fact that the firearm was
also used in connection with the offense of carjacking does not preclude the use of the guideline for
the most serious offense committed with the firearm,' in this case, attempted murder," there was
evidence in that case that demonstrated the defendant did attempt to commit murder, namely that
the defendant shot another in the head. As the Court has found, there is insufficient evidence to find
the defendant was going to falsely imprison anyone when attempting to execute the citizens' arrest
warrants.

level of 19. The defendant objects to the application of both of these enhancements (Defendant's Objections #5 and #6), but the Court finds the enhancements appropriate.

Section 2A2.2(b)(1) adds two levels because the assault involved more than minimal planning. The defendant objects on the basis that the aggravated assault guideline does not apply. However, U.S.S.G. § 1B1.5(a) provides that "[a] cross reference (an instruction to apply another offense guideline) refers to the entire offense guideline (i.e., the base offense level, specific offense characteristics, cross references, and special instructions)." Thus, it is appropriate to apply this enhancement.

Section 2A2.2(b)(2)(C) adds three levels because a dangerous weapon, including a firearm, was brandished or its use was threatened. The defendant states the he placed the .45 caliber weapon he was carrying in his toolbox on his truck when he was stopped by law enforcement, which remained there for the entirety of the time he was in Madisonville on April 20, 2010. Application Note 1(C) of U.S.S.G. § 1B1.1, which outlines definitions of terms that are frequently used in the Guidelines, provides that "brandished" with reference to a dangerous weapon, including a firearm, "means that all or part of the weapon was displayed, or the presence of the weapon was otherwise made known to another person, in order to intimidate that person, regardless of whether the weapon was directly visible to that person." "[A]lthough the dangerous weapon does not have to be directly visible, the weapon must be present." U.S. Sentencing Guidelines Manual § 1B1.1 cmt. n.1(C). The defendant told those who had congregated in Madisonville, as well as law enforcement officers, that he had the firearm in his truck, and there is no dispute that he actually had a firearm. Also,

the defendant informed law enforcement that he had the firearm because "ain't no government official gonna go peacefully." Thus, the enhancement is appropriate.

Accordingly, as the resulting offense level pursuant to U.S.S.G. § 2A2.2, 19, is greater than the offense level for U.S.S.G. § 2K2.1, 18, the Court finds it applies pursuant to U.S.S.G. § 2K2.1(c).

In sum, for the reasons explained, the Court **OVERRULES** Government's Objections #2 and #3 and Defendant's Objections #4, #5, and #6.

### C.    Defendant's Objection #7

The defendant objects to paragraph 23, which adds six levels pursuant to U.S.S.G. § 3A1.2(b) because both U.S.S.G. § 3A1.2(a)(1) and (2) apply and the applicable Chapter Two guideline is from Chapter Two, Part A.  The defendant asserts Chapter Two, Part A guidelines are inapplicable here.

Section 3A1.2(b) provides that "[i]f subsection (a)(1) and (2) apply, and the applicable Chapter Two guideline is from Chapter Two, Part A (Offenses Against the Person), increase by 6 levels."  Subsection (a) provides: "[i]f (1) the victim was (A) a government officer or employee; (B) a former government officer or employee; or (C) a member of the immediate family of a person described in subdivision (A) or (B); and (2) the offense of conviction was motivated by such status, increase by 3 levels."  U.S. Sentencing Guidelines Manual § 3A1.2(a).

Here, the victims were government officers or employees, namely, those individuals listed in the citizens' arrest warrants, and the offense of conviction was motivated by the

status of the victims because the defendant believed they were committing treason.  Also, the applicable guideline, U.S.S.G. § 2A2.2, aggravated assault, is from Part A of Chapter Two. Thus, the enhancement is appropriate.  Defendant's Objection #7 is **OVERRULED**.

### D.    Defendant's Objection #8

The defendant objects to paragraph 24, which adds two levels pursuant to U.S.S.G. § 3C1.1 because, at trial, the defendant denied making certain statements about his intentions to take over the City of Madisonville and the courthouse to Shane Longmire and Erica Dupree.  The defendant acknowledges he denied making these statements, but claims the jury's verdict did not resolve the conflict, as the jury acquitted the defendant of Count II. Also, the defendant submits the jury could have based its verdict on Count I on other evidence beyond the testimony of Mr. Longmire and Ms. Dupree, particularly the video of the traffic stop on April 20, 2010, even if it accredited the defendant and discredited Mr. Longmire and Ms. Dupree.

Section 3C1.1 provides that the offense level should be increased by two levels if

> (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense.

The guideline provides examples of covered conduct, including "committing, suborning, or attempting to suborn perjury, including during the course of a civil proceeding if such perjury pertains to conduct that forms the basis of the offense of conviction."   U.S. Sentencing

Guidelines Manual § 3C1.1 cmt. n.4(B). Also, the application notes provide that, "[i]n applying this provision in respect to alleged false testimony or statements by the defendant, the court should be cognizant inaccurate testimony or statements sometimes may result from confusion, mistake, or faulty memory, and thus, not all inaccurate testimony or statements necessarily reflect a willful attempt to obstruct justice." U.S. Sentencing Guidelines Manual § 3C1.1 cmt. n.2.

The Sixth Circuit has instructed that a district court should adhere to the following procedure when applying U.S.S.G. § 3C1.1 in the context of perjurious statements: "(1) identify perjurious statements the defendant made on the stand, (2) find that the defendant made these statements wilfully, and (3) find that these false statements were material." *United States v. Vargas-Gutierrez*, No. 11-1627, 2012 WL 738726, at *4 (6th Cir. Mar. 7, 2012) (citing *United States v. Sassanelli*, 118 F.3d 495, 501 (6th Cir. 1997)); *see also United States v. Kish*, 424 F. App'x 398, 410 (6th Cir. 2011) ("A district court's finding of perjury [is] sufficient where it state[s] that '*the defendant was untruthful at trial with respect to material matters* in this case' and that the untruthful testimony on material matters '*was designed to substantially affect the outcome of the case*.'" (alterations and emphasis in original and citations omitted)). Evidence is considered material in this context when, "if believed, would tend to influence or affect the issue under determination." U.S. Sentencing Guidelines Manual § 3C1.1 cmt. n.6.

Here, the perjurious statement made by the defendant on the stand was that he said he did not say to Mr. Longmire and Ms. Dupree that he intended on taking over the City of

Madisonville and courthouse. In light of all the evidence presented at trial, including the defendant's actions the day of April 20, 2010, the Court finds this statement was untruthful. The Court also finds the defendant made this statement willfully—indeed, the defendant does not deny making the statement during trial—and for the purpose of affecting the outcome of the case. If the jury had believed the defendant, then they could have acquitted him of violating 18 U.S.C. § 231(a)(2) because the statement goes to the defendant's intent in regard to traveling to Tennessee on April 20, 2010. Although, as the defendant points out, other evidence, including the April 20 traffic stop video, negates this materiality to some degree, such does not make the untruthful statement immaterial. Defendant's Objection #8, therefore, is **OVERRULED**.

### E. Government's Objection #4

The government seeks to increase the defendant's offense level by four points pursuant to U.S.S.G. § 3B1.1(a), which provides that "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels."[6] A participant is a "person who is criminally responsible for the commission of the offense, but need not have been convicted." U.S. Sentencing Guidelines Manual § 3B1.1 cmt. n.1. Factors the Court should utilize in determining the nature of a defendant's participation include:

---

[6]At the hearing, the government stated that, while its objection requested the four-level enhancement pursuant to U.S.S.G. § 3B1.1(a), it believed the three-level or two-level enhancements set forth in U.S.S.G. § 3B1.1(b) and (c) would be appropriate as well.

> the exercise of decision making authority, the nature of participating in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

U.S. Sentencing Guidelines Manual § 3B1.1 cmt. n.4. There is no requirement that each factor be met. *United States v. Green*, 202 F.3d 869, 871 (6th Cir. 2000). And there can be more than one leader or organizer. *Id*. In order for this enhancement to apply, the government must prove the defendant's role by a preponderance of the evidence. *United States v. Bennett*, 291 F.3d 888, 897 (6th Cir. 2002).

The government submits that on April 1, 2010, the defendant and several other individuals accompanied Walter Fitzpatrick as he attempted to execute citizen's arrest warrants on the grand jury foreman, Walter Pettway, and the Monroe County Sheriff, James Bivens. The defendant videotaped these attempted arrests for the purpose of publishing them on the internet. On April 7, 2010, the defendant drove to Madisonville to meet with Fitzpatrick and others to plan future citizens' arrests in Madisonville. And the government points out that at the defendant's trial, there was evidence of text messages between the defendant and Mike Fulmer from that trip wherein the defendant stated that he "met with the arrested to coordinate with all groups involved." He also stated that they did not execute any arrest warrants that day but that they were moving to phase two.

Then on April 20, 2010, the government points out that the defendant was stopped by the Tennessee Highway Patrol for a traffic violation as he drove to Madisonville, and he was

in possession of numerous citizens' arrest warrants at that time. He also discussed his plans with the officers during the stop and told them that he was "at the higher end of the enforcement side of this whole thing." In addition, the government asserts there was evidence that the defendant attempted to recruit the officers to join his efforts.

When in Madisonville, the government states the evidence demonstrated that the defendant met with other members of the Georgia Militia and other supporters of the plan. Witnesses testified that the group congregated at Donna's restaurant and outside the courthouse. A recording of the defendant's "motivational" speech, the government argues, supports that he was someone in a leadership position, and demonstrates that he regaled the crowd about the fact that he had an AK-47 in his truck with 300–400 rounds of ammunition. He also told cohorts that they would have to come back another day.

In addition, the government submits the defendant continued his recruitment efforts on April 30, 2010, when he returned to Tennessee in an attempt to get sheriffs from various counties to join him. He met with Loudon County Sheriff Tim Guider. He also appeared for a series of videos on the internet website "Rise up for America," in which he promoted the group's efforts in Madisonville.

During the hearing, it was contested whether the government had proven that the criminal activity in this case involved five or more participants or was otherwise extensive. The government argued the trial testimony demonstrated that five or more people were involved; however, the Court finds that, while the government demonstrated by a preponderance of the evidence that at least three individuals were involved with the criminal

activity (indeed, the jury had to have found at least three individuals were involved in light of the definition of "civil disorder" set forth in 18 U.S.C. § 232), the government did not show the criminal activity involved at least five participants. Accordingly, neither U.S.S.G. § 3B1.1(a) nor (b) can apply here.

The government nevertheless maintained that, even if there were less than five participants, the two-level enhancement set forth in U.S.S.G. § 3B1.1(c) should apply. That provision provides for a two-level enhancement "[i]f the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b)." U.S. Sentencing Guidelines Manual § 3B1.1(c).

The Sixth Circuit has stated that, in order to enhance a sentence under U.S.S.G. § 3B1.1, the district court must determine that the defendant exerted control over at least one individual. *United States v. Fearnow*, No. 10-6034, 2012 WL 386388, at *2 (6th Cir. Feb. 8, 2012) (citing *United States v. Lalonde*, 509 F.3d 750, 765 (6th Cir. 2008)); *see also United States v. Pardue*, No. 09-6313, 2012 WL 898674, at *4 (6th Cir. Mar. 16, 2012) (citing *United States v. Ward*, 506 F.3d 468, 476 (6th Cir. 2007)); U.S. Sentencing Guidelines Manual § 3B1.1 cmt. n.2. "[M]erely playing an essential role in the offense is not equivalent to exercising managerial control over other participants and/or the assets of a criminal enterprise." *Id.* at *2 (quoting *Lalonde*, 509 F.3d at 765). The Court finds that, although the evidence submitted by the government in this case demonstrates the defendant had an essential role in the criminal activity and may have inspired individuals to meet him in Madisonville on April 20, 2010, or to support the cause of Walter Fitzpatrick that the

defendant was supporting, none of the evidence demonstrates that the defendant exerted control over any one individual involved in the criminal activity.  Accordingly, the Court **OVERRULES** Government's Objection #4.

### III.     Miscellaneous Objections

#### A.     Defendant's Objection #9

The defendant objects to paragraph 38 of the PSR, which addresses certain medical information related to the defendant's military service.  The defendant states he does not intend on relying upon his military service as a basis for a downward variance, and thus this information is irrelevant.  This information is included in the PSR to give the Court an overview of the defendant's history and characteristics, and as such, it is relevant to sentencing.  The fact that the defendant will not reply upon such information as a basis for a variance does not negate its relevance.   Accordingly, Defendant's Objection #9 is **OVERRULED**.

#### B.     Defendant's Objection #10

The defendant objects to the computation of the Guidelines as set forth on page 6 paragraph 49.  This objection is **OVERRULED as moot** in light of the Court's rulings on the various objections to the Guidelines calculations.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE